IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| Kenneth Towers and Gloria Towers,<br><br>Plaintiffs,<br><br>vs.<br><br>Ross O. Haugen, Merrill Lynch, Pierce, Fenner & Smith, Inc., and Wachovia Securities, Inc., d/b/a First Union Securities,<br><br>Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**Case No.** 2:07-CV-20 |

Plaintiffs Kenneth Towers and Gloria Towers, for their claims and causes of action against the defendants, state and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1. The causes of action alleged in this Complaint are brought under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j(b)) and Rule 10(b)(5) (17 C.F.R. § 240.10b-5) promulgated under the Securities Exchange Act; Section 17(a) of the Securities Act of 1933 (15 U.S.C.A. § 77q(a)); Section 20 of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78t); Section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78o(c)(1) and Rule 15c1-2 (17 C.F.R. § 240.15c1-2) promulgated under the Securities Exchange Act. Jurisdiction of the court is based on Section 27 of the Securities Exchange Act of 1934 (15 U.S.C.A. §§ 78aa and 17bb) and 28 U.S.C.A. §§ 1331 and 1332.

2. This court has pendent jurisdiction over the remaining state law claims which, together with those arising under the laws of the United States, have a common nucleus of operative facts and constitute a single case or controversy.

3. The amount of controversy, exclusive of interest sand costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

4. At all times material herein, Kenneth Towers and Gloria Towers were residents of Grand Forks, North Dakota.

5. At all times material herein, Defendant Ross O. Haugen was a securities broker-inside sales person, also known as a financial advisor, registered with the Securities and Exchange Commission, and the North Dakota Securities Commission.

6. Defendant Ross Haugen is a resident of the State of Minnesota.

7. As a registered broker, Defendant Ross Haugen is held to the same standard of care as other securities brokers-inside sales persons and financial advisors registered with the Securities and Exchange Commission and registered with the North Dakota Securities Commission.

8. At all times material herein, Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereafter Merrill Lynch) was and is a Delaware foreign business corporation with its principal offices in the State of New York, and was authorized to do business as a registered broker and dealer in securities in the State of North Dakota.

9. At all times material herein, Defendant Merrill Lynch was doing business as a NASD and NYSE registered securities brokerage firm, including retail and institutional sales, investment banking services, trading, and research.

10. Defendant Ross O. Haugen was employed by Defendant Merrill Lynch from September 1995 through April 2001.

11. At all times material herein, Defendant Merrill Lynch is, and was a securities brokerage company that, among other things, purchases and sells securities on behalf of its customers. From September 1995 through April 2001 Defendant Merrill Lynch was a controlling person of Defendant Ross Haugen within the meaning of 15 U.S.C.A. § 78t and at all times pertinent to this complaint, Defendant Ross Haugen was acting within the scope of his employment within the meaning of 7 U.S.C.A. § 4.

12. At all times material herein, Defendant Merrill Lynch has maintained an office in Grand Forks, North Dakota, and has conducted business in the State of North Dakota.

13. At all times material herein, Defendant Wachovia Securities, Inc., d/b/a First Union Securities (hereafter First Union/Wachovia) was and is a Delaware foreign corporation with its principal offices in the State of Virginia, and was authorized to do business as a NASD registered securities brokerage firm in the State of North Dakota, including retail and institutional sales, investment banking services, trading, and research.

14. At all times material herein, Defendant First Union/Wachovia has maintained an office in Grand Forks, North Dakota, and has conducted business in the State of North Dakota.

15. Defendant Ross O. Haugen was employed by Defendant First Union/Wachovia from May 2001 through July 2002.

16. At all times material herein, Defendant First Union/Wachovia is, and was a securities brokerage company that, among other things, purchases and sells securities on behalf of its customers. From May 2001 through July 2002 Defendant Merrill Lynch was a controlling person of Defendant Ross Haugen within the meaning of 15 U.S.C.A.

§ 78t and at all times pertinent to this complaint, Defendant Ross Haugen was acting within the scope of his employment within the meaning of 7 U.S.C.A. § 4.

17. Defendant Merrill Lynch is vicariously liable for the acts and/or omissions of Defendant Haugen and any other employees or agents of Merrill Lynch who had contact with, made recommendations to, or traded securities on behalf of Plaintiffs, and for the injuries sustained by Plaintiffs Kenneth and Gloria Towers during Defendant Haugen's employment from September 1995 through April 2001.

18. Defendant Merrill Lynch held out to the public that Defendant Ross Haugen was their agent and/or broker in securities and that he was acting within their policies and control to be a broker in securities that would act in the best interests of Merrill Lynch's investment clients by providing safe investments that are suitable to each particular client's needs, including the best interests of Plaintiffs Kenneth and Gloria Haugen.

19. Defendant Merrill Lynch had a duty to supervise and monitor the actions of its employees and/or agents, including Defendant Ross Haugen while he was investing the funds of Merrill Lynch's investment clients, including Defendant Haugen's investment advice, recommendations, and transactions on behalf of Plaintiffs Kenneth and Gloria Haugen.

20. Plaintiffs Kenneth and Gloria Haugen relied on Defendant Merrill Lynch's representations that Defendant Haugen would act in their best interests when investing their funds.

21. Defendant First Union/Wachovia is vicariously liable for the acts and/or omissions of Defendant Haugen and any other employees or agents of First Union/Wachovia who had contact with, made recommendations to, or traded securities

on behalf of Plaintiffs, and for the injuries sustained by Plaintiffs Kenneth and Gloria Towers during Defendant Haugen's employment with First Union/Wachovia from May 2001 through July 2002.

22. Defendant First Union/Wachovia held out to the public that Defendant Ross Haugen was their agent and/or broker in securities and that he was acting within their policies and control to be a broker in securities that would act in the best interests of First Union/Wachovia's investment clients by providing safe investments that are suitable to each particular client's needs, including the best interests of Plaintiffs Kenneth and Gloria Haugen.

23. Defendant First Union/Wachovia had a duty to supervise and monitor the actions of its employees and/or agents, including Defendant Ross Haugen while he was investing the funds of First Union/Wachovia's investment clients, including Defendant Haugen's investment advice, recommendations, and transactions on behalf of Plaintiffs Kenneth and Gloria Haugen.

24. Plaintiffs Kenneth and Gloria Haugen relied on Defendant First Union/Wachovia's representations that Defendant Haugen would act in their best interests when investing their funds.

## FACTUAL STATEMENT

25. Plaintiffs incorporate by reference as if more fully set forth herein each and every allegation contained in the opening paragraphs 1-24 of this complaint.

26. In 1997 Kenneth and Gloria Towers had an account open with Defendant Merrill Lynch.

27. On or about January 1997 Kenneth and Gloria Towers became acquainted with Defendant Haugen, through mutual friends and through their attendance at the same church.

28. Defendant Haugen recommended Plaintiffs entrust him with their investment accounts.

29. On or about January 1997 Ross O. Haugen became the financial advisor assigned to Kenneth and Gloria Towers' accounts with Defendant Merrill Lynch.

30. At the time Ross O. Haugen became the financial advisor for Kenneth and Gloria Towers, their portfolio showed their risk level to be moderate and their investment objective to be total return.

31. Plaintiffs' financial situation included owning two restaurant businesses and a home. They invested the majority of their cash-flow with Defendant Ross Haugen to be used for their retirement. They had no other financial resources to rely on.

32. In the year 2001 Kenneth Towers was 62 years old and Gloria Towers was 61 years old.

33. Plaintiffs are, and were at all times pertinent to this complaint, unsophisticated in and lacking knowledge of the handling and investing of money and, in particular, were unsophisticated in, and lacked knowledge of, matters relating to investments in stocks and options. Plaintiffs were not in the business of being stock brokers, nor did they have knowledge of how to invest their money so that it would be safe for their retirement.

34. Defendants Haugen and Merrill Lynch had full knowledge of Plaintiffs' age, occupation, martial status, financial resources, financial needs. and prior investment experience.

35. Plaintiffs relied upon and trusted Defendant Haugen's expertise as a broker to invest and protect their retirement funds.

36. Plaintiffs relied upon and trusted Defendant Merrill Lynch's expertise as a brokerage firm to hire highly qualified brokers who would act in the best interests of Defendant Merrill Lynch's investment clients, and who would monitor the actions of their brokers, including Defendant Haugen.

37. Plaintiffs gave Defendants Haugen and Merrill Lynch complete control of their investment accounts.

38. Plaintiffs' investment objectives were to use the money they invested for their retirement. These objectives did not change at any time while Defendants Haugen and Merrill Lynch were in control of Plaintiffs' investment accounts.

39. Plaintiffs Kenneth Towers and Gloria Towers met with Defendant Haugen approximately every two to three months regarding their portfolio. At each meeting they advised Defendant Haugen that it was their intent to be conservative in their investments, that the money they were investing was their life savings that would be used for their retirement, and that they did not wish to lose any of their principal.

40. During each meeting with Defendant Haugen, Plaintiffs advised him that he had full authority and full discretion with respect to their investment accounts because they were unsophisticated and uneducated in the area of investments and securities. However, they gave specific instructions that he was not to invest any of their money in options.

41. Defendant Merrill Lynch had active and/or constructive knowledge of the investment objectives of Plaintiffs Kenneth and Gloria Towers and the clear instructions they had given to Defendant Ross Haugen as to their investment account.

42. During the years of 1997 through December 1999, the Towers' accounts with Defendant Merrill Lynch were diversified between municipal bonds, mutual funds, equities and cash/money funds.

43. Beginning in December 1999 and January 2000 Defendant Haugen changed this diversification to be heavily weighted in equities.

44. By March 31, 2000 98% of Kenneth and Gloria Towers' joint account was in equities and only 2% in mutual funds. Their IRAs remained between 63% and 65% equities.

45. Between March 31, 2000 and November 30, 2000, the Towers had lost more than $42,000.

46. Plaintiffs voiced their concerns to Defendant Haugen, who recommended they keep their portfolio heavy in the area of equities, that this was just a temporary setback, and that their investments would pay off. Plaintiffs relied on, trusted, and followed Defendant Haugen's recommendations.

47. By the end of April 2001, 93% of all of the Towers' money was tied up in equities. Between January 2001 and April 2001 the Towers had lost at least another $77,000.

48. Defendant Merrill Lynch had actual or constructive knowledge of Plaintiffs' investment objectives and that Defendant Haugen was investing Plaintiffs' funds contrary to those objectives, but failed to intervene on Plaintiffs' behalf.

49. Defendants Haugen and Merrill Lynch knew or should have known that failure to diversify Plaintiffs' investment accounts could cause them to lose a substantial amount of their investment.

50. Defendants Haugen and Merrill Lynch knew or should have known that placing the majority of Plaintiffs' investments in equities could cause them to lose a substantial amount of their investment.

51. In April or May 2001 Defendant Haugen stopped working for Defendant Merrill Lynch and began working for Defendant First Union Securities, which was later renamed Wachovia Securities, Inc.

52. Between May 2001 and August 2001, Defendant Towers met with and conversed frequently with Plaintiffs Kenneth and Gloria Towers, recommending that they transfer their money into an account with his new brokerage firm. He promised to recoup the money they had lost while they were with Merrill Lynch.

53. Between August and September 2001, Plaintiffs Kenneth and Gloria Towers put their trust in Defendant Haugen and transferred the majority of their investment accounts to First Union/Wachovia.

54. Plaintiffs gave Defendants Haugen and First Union/Wachovia complete control and authority over their investment accounts. Plaintiffs again trusted and relied upon Defendant Haugen's expertise as a broker to invest and protect their retirement funds.

55. When Kenneth and Gloria Towers opened their accounts with First Union/Wachovia, they listed their financial objective as income and safety and on a risk scale of one to six, with six being the most risky, they listed their risk at one and two.

56. The total principal investment with First Union/Wachovia was $61,698 in August 2001 and $145,202 in October 2001.

57. Defendants Haugen and First Union/Wachovia had full knowledge of Plaintiffs' age, occupation, marital status, financial resources, financial needs, and prior investment experience.

58. Plaintiffs relied upon and trusted Defendant Haugen's expertise as a broker with First Union/Wachovia to invest and protect their retirement funds.

59. Plaintiffs relied upon and trusted Defendant First Union/Wachovia's expertise as a brokerage firm to hire highly qualified brokers who would act in the best interests of Defendant First Union/Wachovia's investment clients, and who would monitor the actions of their brokers, including Defendant Haugen.

60. Plaintiffs' investment objectives were to use the money they invested for their retirement. These objectives did not change at any time while Defendants Haugen and First Union/Wachovia were in control of Plaintiffs' investment accounts.

61. In the second quarter of 2002 First Union Securities was renamed Wachovia Securities. Paperwork on file with Wachovia shows the Towers' investment objectives as growth and income and a risk level of moderate.

62. Kenneth and Gloria Towers continued to meet with Defendant Haugen approximately every two to three months. At each meeting Plaintiffs advised Defendant Haugen that they wished to remain conservative, that the money they were investing was their life savings that would be used for their retirement, not to invest in options, and to protect their principal. Defendant Haugen promised he would do so.

63. At each meeting between Kenneth and Gloria Towers and Defendant Haugen, Plaintiffs expressed their concern as to the status of their investments. Each time Plaintiffs expressed their concerns, Defendant Haugen assured them that they would not lose money and their principal would be protected.

64. During each meeting with Defendant Haugen, Plaintiffs advised him that he had full authority and full discretion with respect to their investment accounts because they were unsophisticated and uneducated in the area of investments and securities. However, they gave specific instructions that he was not to invest any of their money in options.

65. Defendant First Union/Wachovia had active and/or constructive knowledge of the investment objectives of Plaintiffs Kenneth and Gloria Towers and the clear instructions they had given to Defendant Haugen as to their investment account.

66. In late 2001 or early 2002 Defendant Haugen telephone Plaintiffs and advised them that he had been to a seminar recently and that he had a way to earn back all of the money Plaintiffs had lost. Defendant Haugen knew from previous conversations with Plaintiffs that they wanted to remain conservative in their investments and did not want to risk losing any of their principal.

67. Defendant Haugen advised Plaintiffs that there was no way they would lose any money if they trusted him with their investments. Defendant Haugen did not provide any details about his plans for investing Plaintiffs' money, but recommended that Plaintiffs trust him.

68. Plaintiffs trusted Defendants Haugen and First Union/Wachovia and followed their recommendations, but Plaintiffs reiterated that they did not want to lose any of their principal. Defendant Haugen advised them that there was no way they would lose any money.

69. Among the transactions executed by Defendant Haugen in Plaintiffs' investment accounts were the purchases and sales of various options and stocks.

70. It is common knowledge among brokers that options trading is risky and has the potential for greater losses than other forms of securities.

71. Defendant First Union/Wachovia had actual or constructive knowledge of Plaintiffs' investment objectives and that Defendant Haugen was investing Plaintiffs' funds contrary to those objectives, but failed to intervene on Plaintiffs' behalf.

72. Defendants Haugen and First Union/Wachovia knew or should have known at the time he was making his recommendations and promises to Plaintiffs to let him recoup their money and at the time he was purchasing stocks and options with Plaintiffs' investment funds that he was putting Plaintiffs' investment funds at great risk for loss.

73. Defendants Haugen and First Union/Wachovia knew or should have known that placing the majority of Plaintiffs' investment funds into options and stocks would cause them to lose a substantial amount of their investment.

74. Defendant Haugen's excessive trading practices include approximately 72 transactions on November 27-28, 2001; approximately 24 transactions on January 3, 2002; and approximately 22 transactions on January 28, 2002, all in the area of stocks and options.

75. The transactions executed by Defendant Haugen in Plaintiffs' securities accounts were unsuitable for them and were excessive in size and frequency and were transacted by Defendant Haugen exercising complete control over Plaintiffs' account for his own benefit and in disregard of the interests of Plaintiffs.

76. Defendant First Union/Wachovia had constructive knowledge that the transactions executed by Defendant Haugen in Plaintiffs' securities accounts were unsuitable for them and were excessive in size and frequency and were transacted by

Defendant Haugen exercising complete control of Plaintiffs' accounts and in total disregard of their interests, but failed to intervene on Plaintiffs' behalf.

77. By May 31, 2002, Plaintiffs' investment accounts were more than 95% stocks and options and only 5% cash and money market funds.

78. By May 31, 2002, Plaintiffs had lost more than $42,000 of their initial investment with First Union/Wachovia.

79. On June 11, 2002 Kenneth and Gloria Towers sent a letter to Defendant Ross Haugen advising him that he was not to have any more activity on their accounts.

## COUNT ONE
## (UNSUITABILITY, FRAUD, MATERIAL MISSTATEMENT AND OMISSION)

Plaintiffs, for Count One of their cause of action against Defendants, states and alleges as follows:

80. Plaintiffs incorporate by reference as if more fully set forth here each and every allegation contained in paragraphs 1 through 79 of this complaint.

81. Beginning in December 1999 or January 2000 and continuing after that time, Defendants made representations to Plaintiffs and solicited them to keep their account open and/or open new accounts with them for the purpose of purchasing and selling securities and/or options through them.

82. At the time Plaintiffs' securities accounts and/or options accounts were opened and throughout the time Defendants had open accounts with Plaintiffs, Defendants knew Plaintiffs lacked sufficient investment experience and financial acumen to enable Plaintiffs to make any informed judgments or decisions about how to manage their investment funds and about the purchase and sale of securities and/or options.

83. The recommendations made by Defendant Haugen while he was employed by Merrill Lynch and while he was employed by First Union/Wachovia were done in a careless, reckless, and negligent manner and in total disregard to the suitability of the Towers' financial goals and objectives.

84. The transactions Defendant Haugen effected while he had complete control of Plaintiffs' investment accounts while he was employed by Merrill Lynch and while he was employed by First Union/Wachovia were done in a careless, reckless, and negligent manner and in total disregard to the suitability of the Towers' financial goals and objectives.

85. Defendant Haugen failed to appropriately diversify Plaintiffs' investment accounts and protect their principal investment and retirement funds.

86. Defendant Haugen made material misrepresentations to Plaintiffs and omitted providing complete details of his activities with Plaintiffs' investment accounts while he was employed by First Union/Wachovia so as to maintain control of their accounts, thereby depriving them of the ability to intelligently consent to his recommendations or discontinue their employment of him as an investment broker.

87. Defendants Haugen, Merrill Lynch and First Union/Wachovia acted with scienter in making unsuitable trading recommendations to the Plaintiffs.

88. Defendant Haugen failed to properly investigate the investments he recommended and transacted on behalf of Plaintiffs to ensure suitability for their stated objectives and investment goals.

89. Defendant Merrill Lynch had active or constructive knowledge of the actions of Defendant Haugen while he was under their employment, including but not limited to Defendant Haugen's failure to appropriately diversify Plaintiffs' investment

accounts and protect their principal investment and retirement funds, Defendant Haugen's material misrepresentations to Plaintiffs, and Defendant Haugen's failure to properly investigate the investments he recommended and transacted on behalf of Plaintiffs to ensure suitability for their stated objectives and investment goals and directly and tacitly endorsed or ratified the actions of Defendant Haugen for their financial benefit.

90. Defendant First Union/Wachovia Lynch had active or constructive knowledge of the actions of Defendant Haugen while he was under their employment, including but not limited to Defendant Haugen's failure to appropriately diversify Plaintiffs' investment accounts and protect their principal investment and retirement funds, Defendant Haugen's material misrepresentations to Plaintiffs, Defendant Haugen's actions of omitting complete details of the his activities with respect to Plaintiffs' investment accounts, and Defendant Haugen's failure to properly investigate the investments he recommended and transacted on behalf of Plaintiffs to ensure suitability for their stated objectives and investment goals and directly and tacitly endorsed or ratified the actions of Defendant Haugen for their financial benefit.

91. The above-mentioned acts and conducts of Defendants Haugen, Merrill Lynch and First Union/Wachovia were done knowingly by them with the intent to deceive and defraud Plaintiffs. In engaging in such acts and conduct, Defendants made use of the means and instrumentalities of interstate commerce and such acts and conduct constituted a device, scheme, and/or artifice to defraud, as well as a practiced course of business that operated as a fraud or deceit on Plaintiffs in violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j(b)) and Rule 10(b)-5 (17 C.F.R. § 240.10b-5) promulgated under the Securities Exchange Act; Section 17(a)

of the Securities Act of 1933 (15 U.S.C.A. § 77q(a)); Section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78o(I)) and Rule 15c1-2 (17 C.F.R. § 240.15c1-2) promulgated under the Securities Exchange Act.

92. Defendant Merrill Lynch failed to protect Plaintiffs from the fraudulent actions of their broker, Defendant Haugen.

93. Defendant First Union/Wachovia failed to protect Plaintiffs from the fraudulent actions of their broker, Defendant Haugen.

94. The acts and conduct of Defendants Haugen and First Union/Wachovia also violated N.D.C.C. §10-04-15. As a direct and proximate result of the violation of that statute, Plaintiffs have been injured and damaged as set forth below.

95. As a proximate result of the above-mentioned acts and conduct of Defendants, Plaintiffs have been injured and damaged in that Plaintiffs have suffered the loss of interest and dividend income, have suffered a diminution in the value of Plaintiffs' investment portfolio, have suffered loss of income that would have been earned had their money been in a well-managed investment account, and have incurred and been subjected to excessive transfer fees and Plaintiffs have suffered and will continue to suffer mental anguish and emotional distress, in a reasonable amount in excess of Fifty Thousand Dollars ($50,000.00).

**COUNT TWO**
**(BREACH OF FIDUCIARY DUTY)**

Plaintiffs, for Count Two of their cause of action against Defendants, state and allege as follows:

96. Plaintiffs incorporate by reference as if more fully set forth herein each and every allegation contained in Paragraphs 1-79 and 81-94 of this Complaint.

97. At all times material herein, Plaintiffs reposed complete confidence and trust in Defendants to handle Plaintiffs' securities accounts in accordance with Plaintiffs' stated investment objectives, thus giving rise to a fiduciary duty on the part of Defendants to Plaintiffs.

98. Plaintiffs developed a friendship and trust through their relationship with Defendant Haugen at church and through mutual friends, as more fully set forth above, and through their knowledge that Defendant Haugen had access to books and records and other sources of knowledge concerning the financial and operating condition of the stock market through his employers, Merrill Lynch and/or First Union/Wachovia.

99. Pursuant to the above-described relationships, Plaintiffs trusted and placed their confidence in Defendants.

100. Defendant Haugen's fiduciary duty included, but was not limited to the duty to recommend a stock only after studying it sufficiently to become informed as to its nature, price, and financial prognosis; the duty to recommend and perform transactions in a manner best suited to serve the Plaintiffs' interests; the duty to inform Plaintiffs of the risks involved in putting all of their funds into equities and then later switching them into options; and the duty not to misrepresent any material fact relating to the transactions he was recommending.

101. Defendant Merrill Lynch had active or constructive knowledge of Defendant Haugen's breach of fiduciary duties with respect to the handling of Plaintiffs' investment accounts, but failed to intervene and protect Plaintiffs' investments.

102. Defendant First Union/Wachovia had active or constructive knowledge of Defendant Haugen's breach of fiduciary duties with respect to the handling of Plaintiffs' investment accounts, but failed to intervene and protect Plaintiffs' investments.

103. The handling of Plaintiffs' securities account by Defendants was outrageous and showed complete indifference to and conscious disregard for the best interests of Plaintiffs and was in reckless disregard of Plaintiffs' rights with full realization of the probable results of such fraudulent handling of Plaintiffs' accounts.

104. The above-mentioned acts and conduct of Defendants, as alleged in the paragraphs above worked as a constructive fraud on Plaintiffs and constituted a breach of fiduciary duty on the part of Defendants.

105. As a direct and proximate result of Defendants' fraudulent handling of Plaintiffs' accounts and breach of their fiduciary duty, Plaintiffs have suffered and will continue to suffer, damages, including without limitations, mental anguish and emotional distress, in a reasonable amount in excess of Fifty Thousand Dollars ($50,000.00).

**COUNT THREE**
**(CHURNING)**

Plaintiffs, for Count Three of their cause of action against Defendants, state and allege as follows:

106. Plaintiffs incorporate by reference as if more fully set forth herein each and every allegation contained in Paragraphs 1-79, 81-94, and 97-104 of this complaint.

107. Defendant Haugen made numerous securities transactions in Plaintiffs' investment accounts while he had complete control of them.

108. Defendant Haugen knew, or should have known, that the transactions he executed on Plaintiffs' behalf were unsuitable for them, were excessive in size and frequency, and were transacted by him for Defendants' benefit and in disregard of the interest of Plaintiffs.

109. The transactions that were excessive include, but are not limited to those that were made while Defendant Haugen was under the employment of First Union/Wachovia between August 2001 and June 2002, including, but not limited to approximately 72 transactions on November 27-28, 2001; approximately 24 transactions on January 3, 2002; and approximately 22 transactions on January 28, 2002, all in the area of options and stocks.

110. Defendant First Union/Wachovia had actual or constructive knowledge of Defendant Haugen's excessive and unsuitable transactions within Plaintiffs' investment accounts, but failed to intervene or protect Plaintiffs' investments.

111. The acts and conduct of Defendants Haugen and First Union/Wachovia were done knowingly by them with intent to deceive and defraud Plaintiffs. In engaging in the acts and conduct, Defendants Haugen and First Union/Wachovia made use of the means and instrumentalities of interstate commerce as a device, scheme, or artifice to defraud, as well as a practiced course of business that operated as a fraud or deceit on Plaintiffs in violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j(b)) and Rule 10b-5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b-5); Section 17(a) of the Securities Act of 1933 (15 U.S.C.A. § 77q(a)); and Section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78o(c)(1)).

112. The acts and conduct of Defendants Haugen and First Union/Wachovia also violated N.D.C.C. §10-04-15. As a direct and proximate result of the violation of that statute, Plaintiffs have been injured and damaged as set forth below.

113. As a proximate result of the acts and conduct of Defendants Haugen and First Union/Wachovia, Plaintiffs have been injured and damaged. Plaintiffs have suffered the loss of interest and dividend income, have suffered diminution in the value

of Plaintiffs' investment portfolio, have suffered loss of income that would have been earned had their money been in a well-managed investment account, and have incurred and been subjected to excessive transfer fees and commissions. Plaintiffs have also suffered and will continue to suffer mental anguish and emotional distress. Plaintiffs' damages are in a reasonable amount in excess of Fifty Thousand Dollars ($50,000.00).

## COUNT FOUR
## (NEGLIGENCE)

Plaintiffs, for Count Four of their cause of action against Defendants, state and allege as follows:

114. Plaintiffs incorporate by reference as if more fully set forth herein each and every allegation contained in Paragraphs 1-79, 81-94, and 97-104 and 107-112 of this complaint.

115. Defendant Haugen failed to comply with the applicable standards of care required under similar circumstances including, but not limited to, inappropriately transferring the Plaintiffs' investment accounts from a diversified investment account to almost completely 100% equities while their investment account was with Merrill Lynch, inappropriately transferring Plaintiffs' investment accounts into 100% options and stocks after their account was moved to First Union/Wachovia, negligently recommending and advising Plaintiffs regarding investment strategies, negligently advising Plaintiffs as to the status of their investment account, negligently advising Plaintiffs that there was no way they could lose money if they let him take control of their account when Plaintiffs transferred their account to Defendant Fist Union/Wachovia, negligently breaching a duty to act with care when investing the Plaintiffs' funds, negligently risking the loss of Plaintiffs' retirement funds when they gave specific instructions not to do so; and other

negligent acts which fail to meet the standard of care appropriate for registered securities broker-inside sales persons, known as a financial advisors.

116. Defendant Merrill Lynch's negligence includes, but is not limited to, failure to appropriately monitor and supervise the actions of its brokers, agents, and/or employees, including Defendant Haugen, while they were in control of Plaintiffs' investment accounts, and failure to intervene on Plaintiffs' behalf to ensure Plaintiffs did not lose a substantial portion of their investment.

117. Defendant First Union/Wachovia's negligence includes, but is not limited to, failure to appropriately monitor and supervise the actions of its brokers, agents, and/or employees, including Defendant Haugen, while they were in control of Plaintiffs' investment accounts, and failure to intervene on Plaintiffs' behalf to ensure Plaintiffs did not lose a substantial portion of their investment.

118. As a proximate result of the acts and conduct of Defendants, Plaintiffs have been injured and damaged. Plaintiffs have suffered the loss of interest and dividend income, have suffered diminution in the value of Plaintiffs' investment portfolio, have suffered loss of income that would have been earned had their money been in a well-managed investment account, and have incurred and been subjected to excessive transfer fees and commissions. As a further direct and proximate result of Defendants' fraudulent handling of Plaintiffs' accounts and breach of their fiduciary duty, Plaintiffs have suffered and will continue to suffer, damages, including without limitations, mental anguish and emotional distress, in a reasonable amount in excess of Fifty Thousand Dollars ($50,000.00).

## COUNT FIVE
## (VIOLATIONS OF SELF-REGULATORY SECURITIES ORGANIZATIONS RULES)

Plaintiffs, for Count Five of their cause of action against Defendants, state and allege as follows:

119. Plaintiffs incorporate by reference as if more fully set forth herein each and every allegation contained in Paragraphs 1-79, 81-94, 97-104 and 107-112 and 115-117 of this Complaint.

120. At all times material herein, Defendant Haugen was a member of the New York Stock Exchange (hereafter NYSE) and subject to their rules, regulations and bylaws.

121. At all times material herein, Defendant Haugen was a member of the National Association of Securities Dealers (hereafter NASD) and was subject to their rules, regulations and bylaws.

122. At all times material herein, Defendant Merrill Lynch was a member of the NYSE and with the NASD and subject to their rules, regulations and bylaws.

123. At all times material herein, Defendant First Union/Wachovia was a member of the NYSE and with the NASD and subject to their rules, regulations and bylaws.

124. The representations, acts, practices, commissions and omissions set forth in this complaint were in violation of applicable bylaws, rules and regulations of the New York Stock Exchange, including, but not limited to, Rules 405 and 408.

125. The representations, acts, practices, commissions and omissions set forth in this complaint were in violation of applicable bylaws, rules and regulations of the National Association of Securities Dealers, including but not limited to, Rules 2310 and 2330.

126. Defendants' failure to comply with the above-enumerated bylaws, rules and regulations, and the failure of Defendant Haugen to comply with those bylaws, rules, and regulations constitutes a material breach and proximately caused Plaintiffs to suffer damages.

127. As a direct and proximate result of the acts and conduct of Defendants, including their failure to follow the bylaws, rules and regulations of the NYSE and NASD, Plaintiffs have been injured and damaged. Plaintiffs have suffered the loss of interest and dividend income, have suffered diminution in the value of Plaintiffs' investment portfolio, have suffered loss of income that would have been earned had their money been in a well-managed investment account, and have incurred and been subjected to excessive transfer fees and commissions. As a further direct and proximate result of Defendants' failure to follow the bylaws, rules and regulations of the NYSE and NASD, Plaintiffs have suffered and will continue to suffer, damages, including without limitations, mental anguish and emotional distress, in a reasonable amount in excess of Fifty Thousand Dollars ($50,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. Under the First Claim for relief, a reasonable amount in excess of Fifty Thousand and no/100 ($50,000), together with interest, including pre-judgment interest;

2. Under the Second Claim for relief, a reasonable amount in excess of Fifty Thousand and no/100 ($50,000), together with interest, including pre-judgment interest;

3. Under the Third Claim for relief, a reasonable amount in excess of Fifty Thousand and no/100 ($50,000), together with interest, including pre-judgment interest;

4. Under the Fourth Claim for relief, a reasonable amount in excess of Fifty Thousand and no/100 ($50,000), together with interest, including pre-judgment interest;

5. Under the Fifth Claim for relief, a reasonable amount in excess of Fifty Thousand and no/100 ($50,000), together with interest, including pre-judgment interest;

6. For costs, disbursements and attorneys fees incurred herein and as allowed by law; and,

7. For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff herein demands trial by jury of all issues triable before a jury.

Dated this 15th day of February, 2007.

SCOTT D. JENSEN
ND License Number 04315
FOR: Camrud, Maddock, Olson & Larson, Ltd.
401 DeMers Avenue
P.O. Box 5849
Grand Forks, ND 58206-5849

*ATTORNEYS FOR PLAINTIFFS*